**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JONATHAN JEANICE** | **CIVIL ACTION NO:** |
| **VERSUS** | **JUDGE:** |
| **CHEM CARRIERS, L.L.C. and PLAQUEMINE POINT SHIPYARD, L.L.C.** | **MAG. JUDGE:** |

## COMPLAINT

      **NOW INTO COURT,** through undersigned counsel, comes Plaintiff, JONATHAN JEANICE, who respectfully represents as follows:

1.

      Made defendants in this action are:

A.  CHEM CARRIERS, L.L.C., a domestic limited liability company authorized to do and doing business in Louisiana; and

B.  PLAQUEMINE POINT SHIPYARD, L.L.C., a domestic limited liability company authorized to do and doing business in Louisiana.

2.

      Plaintiff, JONATHAN JEANICE, is of the lawful age of majority, is a resident of the State of Louisiana, Parish of Livingston, and brings this action pursuant to the LHWCA, general maritime laws of the United States of America, and the laws of the State of Louisiana.

3.

This court has jurisdiction on actions arising under the admiralty and general maritime law pursuant to Article III of the U.S. Constitution and 28 U.S.C. §1333 and federal question jurisdiction because Plaintiff's claims arise under 33 U.S.C. §905. Venue is proper in this district pursuant to 28 U.S.C.A. §1391.

4.

At all times herein, Plaintiff, JONATHAN JEANICE, was employed by Corrosion Consulting & Inspection LLC in the capacity as a vessel surveyor, inspector, and repairman within the coverage of the Longshore and Harbors Workers' Compensation Act, 33 U.S.C. §901, *et seq*.

5.

On June 2, 2021, Plaintiff arrived at Plaquemine Point Shipyard to perform surface preparation inspections on the internal cargo tanks of their barge numbered CCL7.

6.

Upon arrival at Plaquemine Point Shipyard, Plaintiff checked in at the office trailer and made contact with the shipyard manager, John Boyd.

7.

Mr. Boyd asked Plaintiff to also inspect cargo tanks on barges numbered CCL1 and CCL3.

8.

Plaintiff explained that he was only there to inspect CCL 7, but that he would contact his supervisor for approval to inspect the additional barges.

9.

Plaintiff's supervisor approved inspection of the additional barges, CCL1 and CCL3.

10.

After confirming the specifics of the inspections with Mr. Boyd, Plaintiff drove his vehicle from the office trailer to the dock ramp, put on a lifejacket and hard hat, and stepped onto CCL7 where he was greeted by the paint foreman, Julio.

11.

The paint foreman then escorted Plaintiff across the CCL7 barge deck to the farthest tank, tank #3, and watched from above as Plaintiff climbed down a ladder into tank #3. The paint foreman then entered tank #3 and walked around while Plaintiff performed inspections and took photos.

12.

The aforementioned process was repeated for the middle tank on CCL7, tank #2.

13.

The paint foreman then escorted Plaintiff to CCL7, tank #1, the tank nearest the dock entrance and stated that sand blasting of tank #1 was just completed leaving it dusty and not yet ready for inspections.

14.

The paint foreman then escorted Plaintiff to barge CCL1.

15.

The paint foreman stepped onto CCL1 with Plaintiff, walked Plaintiff to the CCL1 tank #1 entrance, and opened the lid for Plaintiff, who stepped onto the ladder and descended down into tank #1, as he had done on the prior inspected tanks.

16.

When plaintiff got to the bottom of the ladder, he stepped down onto the tank floor, unknowingly stepping into a puddle of liquid that surrounded the base of the ladder.

17.

The liquid splashed up onto Plaintiff's leg and into Plaintiff's eye, immediately causing excruciating pain, loss of sight, and making Plaintiff slip and fall as he screamed for help.

18.

As Plaintiff screamed for help and desperately asked what the substance was, the paint foreman or someone shouted back from above, "That's f****** acid, bro. That's acid."

19.

The paint foreman entered the tank, grabbed Plaintiff by the arm, and guided him up the ladder and out of the tank.

20.

The tank foreman then escorted Plaintiff to an eye wash station, but due to low pressure it did not work to flush out Plaintiff's eyes. Plaintiff was then sent to a sink inside of a nearby building that had sufficient water flow where he bent over the sink and continued to flush out his eyes, while crying for someone to call 911.

21.

Upon arrival, a member of the fire department held Plaintiff's head under running water, held his eye open, and continued to flush it out.

22.

Paramedics arrived on scene, asked several questions, continued flushing out Plaintiff's

eye, and instructed him to strip down into his underwear because his clothes were contaminated.

23.

Plaintiff was taken by ambulance to the emergency room for further evaluation and treatment.

24.

As a result of the aforementioned incident, Plaintiff sustained loss of eyesight, burns and severe damage to his eye and legs. Plaintiff's injuries continue to cause him significant pain, suffering, and impairment.

25.

Upon information and belief, Chem Carrier, L.L.C. owned the shipyard and barge involved in the aforementioned incident.

26.

Upon information and belief, Plaquemine Point Shipyard, L.L.C. operates the shipyard and barge involved in the aforementioned incident.

27.

Upon information and belief, Chem Carrier, L.L.C. turned over said barge to defendant Plaquemine Point Shipyard, L.L.C. to conduct maintenance and repairs at its docking and repair facility located within this district.

28.

Plaintiff's injuries and damages are the direct and proximate result of the negligence of Defendants, Chem Carrier, L.L.C. and Plaquemine Point Shipyard, L.L.C.

29.

Plaintiff in no way caused or contributed to causing the incident complained of herein, nor the resultant damages, and in fact, had no reasonable opportunity to avoid same.

30.

Upon information and belief, defendant, Chem Carrier, L.L.C. is liable unto plaintiff in the following non-exclusive particulars, which are pleaded in the conjunctive and in the alternative, as the facts may show:

A.    Violation of its turn over duty of care;

B.    Violation of its intervention duty;

C.    Violation of its duty to warn of danger;

D.    Breach of a legally imposed duty of reasonable care resulting in the accident(s) and injuries referred to herein;

E.    Failure to provide a reasonably safe place to work, resulting in the accident(s) and injuries referred to herein;

F.    Failure to provide a seaworthy vessel, namely, failure to provide adequately trained personnel on the vessel;

G.    Negligence of defendants' agents, resulting in the accident(s) and injuries referred to herein;

H.    Failure to supervise employees properly resulting in the accident(s) and injuries referred to herein;

I.    Failing to properly maintain the vessel;

J.     Failure to furnish and/or employing unsafe equipment and inadequate personnel to do the job; and

K.      Other acts of negligence to be proven at the trial of this cause.

31.

Upon information and belief, defendant, Plaquemine Point Shipyard, L.L.C. is liable unto plaintiffs in the following non-exclusive particulars, which are pleaded in the conjunctive and in the alternative, as the facts may show:

A.      Breach of a legally imposed duty of reasonable care resulting in the accident(s) and injuries referred to herein;

B.      Failure to provide a reasonably safe place to work, resulting in the accident(s) and injuries referred to herein;

C.      Failure to provide a seaworthy vessel, namely, failure to provide adequately trained personnel on the vessel;

D.      Negligence of defendants' agents, resulting in the accident(s) and injuries referred to herein;

E.      Failure to supervise employees properly resulting in the accident(s) and injuries referred to herein;

F.      Failing to properly maintain the vessels;

G.       Failure to furnish and/or employing unsafe equipment and inadequate personnel to do the job; and

H.      Other acts of negligence to be proven at the trial of this cause.

32.

Plaintiff avers that defendants are liable under the doctrine of *respondeat superior*, for the negligence of their agents in causing said accident.

33.

Plaintiff avers that defendants are liable to the them for the negligence of their agents and for other acts of negligence, as cited above, pursuant to 33 U.S.C. §§ 905 (b) and 933 and the General Maritime Law and any other applicable laws.

34.

Defendants are liable unto Plaintiff under the laws of the State of Louisiana.

35.

Plaintiff alleges that each of the acts and omissions of defendants described hereinabove proximately caused Plaintiff to suffer conscious pain and suffering, including, but not limited to:

(a) Past and future physical pain and suffering;

(b) Past and future mental anguish;

(c) Past and future emotional distress;

(d) Past and future lost wages;

(e) Past and future loss of earning capacity;

(f) And past and future medical expenses;

(g) As well as other general and special damages that are reasonable in the premises.


36.

Plaintiff avers that the effect of the injuries he has suffered from the accident alleged herein have caused severe injuries and has rendered him unfit for duty in the past and may continue to render him unfit for duty in the future.

37.

Plaintiff avers, under General Maritime Law, that punitive damages are available. Upon information and belief, defendants previously caused similar exposures to acid and failed to implement procedures, protocols, protections, or warnings to prevent such exposures. Defendants were on notice of the hazard and failed to take reasonable action.

WHEREFORE, plaintiff, JONATHAN JEANICE, an adult of the age of majority, prays that after due proceedings are had that there be judgment entered in his favor and against the defendants, CHEM CARRIER, L.L.C. and PLAQUEMINE POINT SHIPYARD, L.L.C., for special and general damages in an amount according to proof, for interest on all damages in the legal amount from the date of judicial demand, for maintenance and cure, for exemplary and punitive damages, and for all costs of these proceedings, as well as such other and further relief as the court may deem proper, in an amount that is reasonable in the premises.

Respectfully submitted,

/s/Jarrett S. Falcon
**Jarrett S. Falcon, #34539**
Email: jarrett@falconlaw.com
**Timothy J. Falcon, #16909**
Email: tim@falconlaw.com
**Jeremiah A. Sprague, #24885**
Email: jerry@falconlaw.com
**FALCON LAW FIRM, PLC**
5044 Lapalco Boulevard
Marrero, Louisiana 70072
Telephone: (504) 341-1234
Facsimile: (504) 341-8115

*Attorneys for Plaintiff*

**PLEASE SERVE:**

**CHEM CARRIER, L.L.C.**
Through its agent for service of process:
Stephen Jewell
143 East Main Street, Suite 3
New Roads, LA 70760

**CHEM CARRIER, L.L.C.**
Through its agent for service of process:
Robert Ligon
12228 Woodville Street
Clinton, LA 70722

**PLAQUEMINE POINT SHIPYARD, L.L.C.**
Through its agent for service of process:
Jeffrey M. Barbin
400 Convention St., Suite 1100
Baton Rouge, LA 70802